made a bill of sale of its property many years before to the Commercial Cable Company, but the evidence is that it assumed to lease the scow as owner. It rendered bills and received the pay therefor, and it employed the engineer and retained control and possession of the scow. While the fact of the explosion alone did not establish its negligence, that, in connection with the testimony respecting the leaky condition of the tubes and the other evidence in the case, presented a question for the jury. We do not think that we would be justified in setting aside the verdict as against the weight of evidence, and find no reason to order a new trial for any of the exceptions called to our attention. However, a verdict for $20,000 appears to us to be excessive.

The deceased was a strong, healthy, sober, and industrious man, 43 years of age, earning $60 per month, which, according to the evidence of the plaintiff, was all contributed to the support of his family. He left a widow and six children; the oldest being twelve years of age. It may fairly be assumed that he had reached the maximum of earning power. The pecuniary value of his life, then, measured solely by prospective earnings, estimated in accordance with the annuities table, was $8,213.14. Of course, the jury were not concluded by the annuities table, and they may have estimated, in view of the evidence respecting the health and habits of the deceased, that he would live longer than the average expectancy at his age. But, if his expectancy of life be estimated at twenty years, his earnings at the maximum would amount to but $14,400. That sum at 5 per cent. interest would produce his yearly income and leave the principal intact. In addition to earning power, the jury could consider the pecuniary value of the father's advice and care to his young children, which, of course, is largely a matter of speculation; but it seems to me that a sum which will more than produce his yearly income is certainly a liberal allowance for the pecuniary loss of the life of the deceased, taking into account all the elements which may properly be considered.

I recommend that the judgment against the defendant the American Telephone & Telegraph Company be reversed and that a new trial be granted, costs to abide the event; and that the judgment against the defendant the Postal Telegraph-Cable Company be reversed, unless the respondent stipulate to reduce the recovery to the sum of $15,000, and that in that case it be affirmed, without costs. All concur.

---

TRAVELERS' INS. CO. v. KELSEY, Superintendent of Insurance.

(Supreme Court, Appellate Division, Third Department. September 15, 1909.)

INSURANCE (§ 11*)—REGULATION—EXPENDITURES—STATUTES—CONSTRUCTION.
　　Insurance Law (Consol. Laws, c. 28) § 97, limiting the expenses of insurance companies, provides that their expenses for new business shall be limited to an amount not exceeding in the aggregate the total loadings on the premiums for the first year of the insurance received in such calendar year and the present values of the assumed mortality gains for the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

first five years of insurance on policies on which the first premium or installment thereof has been received during the calendar year, as ascertained by the valuation method prescribed in section 84, which declares that the legal minimum valuation shall be in accordance with the select and ultimate method of valuation and on the basis that the rate of mortality during the first five years shall be calculated according to certain specified percentages. *Held*, that a ruling of the insurance commissioner that, with reference to policies on which the present value of the assumed mortality gains of the first five years are largely in excess of the margin of the net premium for the first year over 50 per cent. of the year term premium, the company could not expend the full value of the assumed mortality gains, but only such proportion thereof as was represented by the margin of that premium in excess of the loading and one-half of the one year term premium, was erroneous.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 11.*]

Appeal from Special Term, Albany County.

Suit by the Travelers' Insurance Company against Otto Kelsey, as Superintendent of Insurance of the State of New York, to restrain defendant from revoking plaintiff's certificate authorizing it to do business in the state. From a judgment sustaining defendant's demurrer to the complaint, plaintiff appeals. Reversed, and judgment directed for complainant.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Rosendale & Hessberg (Murray Downs, of counsel), for appellant.
Edward H. Letchworth, Dep. Atty. Gen., for respondent.

SMITH, P. J. This is an action brought to restrain the Superintendent of Insurance from revoking the certificate of plaintiff, a foreign corporation, authorizing it to transact business in the state, on the ground that it has failed to comply with section 97 of the insurance law (Consol. Laws, c. 28). The only question involved is as to the proper construction of that section. The section is entitled "Limitation of Expenses," and provides that insurance companies shall be limited in their expenditures for new business to an amount not "exceeding in the aggregate the total loadings upon the premiums for the first year of insurance received in said calendar year * * * and the present values of the assumed mortality gains for the first five years of insurance on the policies on which the first premium or installment thereof has been received during said calendar year, as ascertained by the select and ultimate method of valuation as provided in section 84 of this chapter." Section 84 is entitled "Valuation of Policies," and provides that the legal minimum valuation "shall be in accordance with the select and ultimate method of valuation and on the basis that the rate of mortality during the first five years" shall be calculated according to certain more or less arbitrary percentages specified.

It seems that in a policy the gross premium is made up of two sums, one the loading and the other called the net premium. The loading is supposed to provide for the proportionate share of this policy of the running expenses of the company. The balance of the premium is called the net premium. This is reckoned upon the basis of such an amount as with interest compounded would produce at the termination

of the policy the amount insured. The expression "vqx," as used in insurance, is the mathematical notation for a one year term premium. "Qx" means the probability of a person aged "x" dying within the year. "V" is the factor which is used to discount a sum of money for one year. In placing insurance, the assured is examined and his health certified. In other words, the risks are selected. It has been found, therefore, that in the first five years the actual liability for insurance is diminished, and section 84 of the insurance law has arbitrarily given the actual liability assumed as a certain percentage of the liability which would exist if the risk had not been selected. Thus in the first year it is declared that the actual liability is one-half "vqx," or 50 per cent.; in the second year it is 65 per cent.; in the third year it is 75 per cent.; in the fourth year, 85 per cent.; and in the fifth year, 95 per cent. The difference then between the net premium and this percentage in the first five years of the continuance of an insurance policy is what is called in insurance "assumed mortality gains," or, in other words, it is such part of the premium as is paid in the first five years more than is needed to compensate the company for the actual liability incurred. In section 97 of the act, which is here for construction, a company is allowed for new business in any year the total loadings upon the new policies placed within that year and the present value of the assumed mortality gains upon the policies where the premium or the first installment of premium is first paid within that year.

But the apparent permission given by this section has been limited by the Superintendent of Insurance. In some policies of insurance the premium is so large that the margin of the net premium over one-half "vqx" exceeds the present values of the assumed mortality gains for the first five years. In such cases the Superintendent of Insurance would allow the use of the full amount of the assumed mortality gains for the first five years. That seems to be permitted by the statute. In some nonparticipating policies, however, the premiums are much less. The present value of the assumed mortality gains for the first five years in such policies may be largely in excess of the margin of the net premium for the first year over and above one-half "vqx." In those cases the Superintendent of Insurance has assumed to say that the company cannot expend the full value of the assumed mortality gains for the first five years, but only such part thereof as is represented by the margin of that premium over and above the loading and one-half "vqx." The learned Attorney General plausibly argues that it could not have been the intention of the Legislature to have allowed a company to expend for new business an amount in excess of the mortality gains received upon such new policies for a given year. It is claimed that, if it be held otherwise, some fund must pay the excess, and that fund invaded must belong to other policy holders. It is further shown from the report of the insurance committee, at page 414 of that report, that such a limitation may have been in the minds of that committee. The answer, however, to this argument would seem to be that whatever may have been the sound legislative policy, and whatever may have been in the mind of the insurance committee in making its report, the limitation of expense has been specified by the Legislature in language clear and explicit, and it is only where the

intent of the Legislature is doubtful that we are allowed to look to the report of a committee or to sound legislative policy for a rule of construction. Prior to the enactment of this law insurance companies were unrestricted as to the amount that should be expended for new business. It may have been the intent of the Legislature to have placed certain restrictions upon that expenditure, although not to have restricted such expenditure to the actual mortality gain in the premium actually paid. Furthermore, there are other sources of profit to an insurance company, which might have been taken into consideration in placing this limitation upon the right of expenditure for new business. In some policies, also, there appear to be margins in the net premiums over one-half "vqx" in excess of the present value of the assumed mortality gains for the first five years. It is difficult to understand why the Legislature should have given a right to the expenditure for new business of the assumed mortality gains for the first five years, if it had been intended in case of some nonparticipating policies to have limited the amount to what would be in fact the mortality gain for only the first year in addition to the loadings upon the policy. If the Legislature had so intended, other phraseology should have been used to express such intent, and the clear permission of the statute should not be construed by the court to affect some other rule of legislative policy which the courts might deem wise. The reference in section 97 to section 84 as to the valuation of policies is for the purpose of determining what is the assumed mortality gain as declared by that section, and for that purpose only.

We are of opinion, therefore, that the restriction imposed by the Superintendent of Insurance is unauthorized by the statute, and the injunction asked for should be granted. Judgment reversed, without costs, and final judgment directed for plaintiff, without costs.

Interlocutory judgment reversed, without costs. Final judgment directed for plaintiff, without costs. All concur.